## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| RAY ROWLAND, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:13-cv-02040-JPM-tmp |
| | ) | |
| CITY OF MEMPHIS, TENNESSEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO DISMISS DEFENDANT CITY OF MEMPHIS, TENNESSEE

Before the Court is the Motion to Dismiss Defendant City of Memphis, Tennessee, which was filed on February 8, 2013. (See ECF No. 4.) Defendant City of Memphis "moves this Court for an order dismissing Plaintiff Ray Rowlands' [sic] claims against the City [of Memphis, Tennessee,] for failure to state a claim upon which relief can be granted." (Def.'s Mem. in Supp., ECF No. 4-1, at 1.) Plaintiff responded in opposition on March 8, 2013. (See ECF No. 11.) Defendant City of Memphis, Tennessee, did not file a reply.

For the reasons stated below, the Motion to Dismiss Defendant City of Memphis, Tennessee (ECF No. 4), is GRANTED. All claims against Defendant City of Memphis, Tennessee, are hereby DISMISSED WITH PREJUDICE.

I.    **BACKGROUND**

This case involves the alleged seizure and disposal of the property of Plaintiff Ray Rowland ("Plaintiff" or "Mr. Rowland") by Memphis Police Department officers Sam Blue, Joseph Benya, Robert Tutt, and Mahajj Abdul-Baaqee ("Defendant Officers") and Defendant City of Memphis, Tennessee (the "City" or the "City of Memphis").

The factual background and procedural background are summarized in turn.

A.    **Factual Background**

"On February 24, 2010, police responded to a complaint of gunshots and arrived at Mr. Rowland's house." (Am. Compl., ECF No. 8, ¶ 7.)  "The report stated that someone claimed that Mr. Rowland had fired two shots in the direction of Joshua Mobbley." (Id.)

"Mr. Rowland told the police he owned guns." (Id. ¶ 8.) "The defendant police officers then told him that if he did not sign a consent form to search his house, they would come back with a warrant, tear up his house, and blowtorch his safe." (Id.)  In response, "Mr. Rowland opened up his gun safe, whereupon the Defendant officers seized his firearms and other accessories." (Id.)  "The incident report stated that the police were not able to determine which weapon was fired at the scene, despite finding two shell casings." (Id. ¶ 9.)

2

"Although Mr. Rowland was charged with aggravated assault, he did not plead guilty to that charge." (Id. ¶ 10.) "[O]n August 16, 2011," Mr. Rowland "was placed on probation for 11 months, 29 days for reckless endangerment, a misdemeanor not involving a gun charge." (Id.)

"[Defendants] disposed of [Mr. Rowland's] property on June 14, 2012." (Id. ¶ 11.) "Defendants have never given notice to Plaintiff concerning his property that was confiscated," and "Mr. Rowland was not given a chance to claim his seized property." (Id.)

**B.   Procedural Background and the Amended Complaint**

On January 22, 2013, Plaintiff filed a Complaint in the Circuit Court of Shelby County, Tennessee. (See ECF No. 1-2.) On that same day, the City removed the action to the United States District Court for the Western District of Tennessee. (See ECF No. 1.)

On February 8, 2013, the City filed the instant Motion to Dismiss. (See ECF No. 4.) On February 15, 2013, Plaintiff filed an Amended Complaint. (See ECF No. 8.) The only difference between the Complaint and the Amended Complaint appears to be that Police Director Toney Armstrong's name was removed from all of the allegations in the Amended Complaint. (Compare ECF No. 1-2, with ECF No. 8.) As a result, the City's Motion to Dismiss was not mooted by the Amended Complaint, and

3

the Court interprets the City's Motion to Dismiss as applying to
the Amended Complaint.  See Carbon Processing & Reclamation, LLC
v. Valero Mktg. & Supply Co., No. 09-2127-STA-cgc, 2009 WL
2369298, at *3 (W.D. Tenn. July 30, 2009) (dismissing as moot a
motion to dismiss when the amended complaint pled additional facts
in support of their claims).

The Amended Complaint states that "[t]his is a civil action
for money damages against [Defendants] for illegally seizing
Plaintiff's property, and after nearly a year and a half,
disposing of Plaintiff's property, or allowing it to be
disposed, without giving Plaintiff a chance to claim his lawful
property."  (ECF No. 8 ¶ 1.)

The Amended Complaint states five "Causes of Action," which
are referred to as "Counts."  (See id. at 3.)  Count I alleges
that Defendants are "liable for conversion" because Defendant
Officers "unlawfully seized Plaintiff's property without being
given permission or consent" and Defendants "exercised dominion
and control over Plaintiff's property, denied him an opportunity
to retrieve it, and have refused to compensate him for his
loss."  (Id. ¶¶ 13-14.)  The City is allegedly liable "under the
doctrine of respondeat superior, and also through its policies
and procedures that allowed Plaintiff's property to be taken
into custody, then sold, destroyed, or otherwise disposed of."
(Id. ¶ 14.)

4

Count II alleges that Defendants violated Tennessee Code Annotated Section ("Section") 39-17-1317 "because they illegally seized or were involved in the confiscation of Plaintiff's property" (id. ¶ 18) and that the City is liable "under the doctrine of respondeat superior, and by allowing the policies and procedures that led to the illegal confiscation and disposition of Plaintiff's property" (id. ¶ 19).

Count III alleges that "[i]n the alternative, if the Defendant officers confiscated the property as stolen property, they are in violation of [Section] 40-17-118" and would be "liable in damages." (Id. ¶¶ 21-22.)

Count IV is entitled "42 U.S.C. § 1983 — Fourth and Fourteenth Amendment Violation." (Id. at 6.) Pursuant to 28 U.S.C. § 1983 ("§ 1983"), Plaintiff alleges that "Defendants, acting under color of state law, both collectively and individually, have . . . deprived Plaintiff of rights secured by the United States Constitution including protection from unreasonable seizures, deprivation of property, and due process under the Fourth and Fourteenth Amendments." (Id. ¶ 24.) Plaintiff further alleges that "Defendants violated Plaintiff's due process rights when they unlawfully confiscated Plaintiff's property" because, "[b]y confiscating Plaintiff's property and not returning it to him, Defendants have deprived Plaintiff of his property without proper due process." (Id. ¶ 25.)

Count V is entitled "Governmental Tort Liability Act." (Id. at 6.)  Plaintiff alleges that the "City of Memphis is a governmental entity within the meaning of the [Tennessee] Governmental Tort Liability Act" (the "TGTLA"), Tenn. Code. Ann. § 29-20-101 through 29-20-408 (West 2012).  (Id. ¶ 27.) Plaintiff further alleges that "[a]t all times pertinent to this action, the Defendant police officers and other employees of the City of Memphis involved in the forfeiture of Plaintiff's property were acting within the scope of their employment." (Id. ¶ 28.)  Plaintiff then alleges that, "[w]ithout limiting the general allegations of negligence, Defendants were negligent by wrongfully disposing of Plaintiff's property, or allowing it to be disposed of, on or about June 14, 2012."  (Id. ¶ 29.)

Count VI is entitled "Negligence."  (Id. at 7.)  Plaintiff alleges that "Defendants owed Plaintiff a duty of care to not unlawfully deprive him of his property."  (Id. ¶ 31.)  Plaintiff further alleges that "Defendant officers breached their duty of care by negligently seizing non-contraband property, and not ensuring that it would be returned to [Plaintiff]."  (Id. ¶ 32.) Plaintiff alleges that the City also breached its duty of care by the actions of the Defendant Officers "under the doctrine of respondeat superior," by "fail[ing] to adequately train or supervise Defendant officers," by "encourage[ing] such behavior [of Defendant Officers] by its policies and procedures

6

concerning confiscation of property," by "fail[ing] to give
Plaintiff proper notice of the sale or disposition of his
property," and by "not giv[ing] [Plaintiff] an opportunity to
retrieve [his property]." (Id.) Plaintiff alleges that "[a]s a
result of Defendants' breach of duty, Plaintiff has suffered the
loss of valuable property." (Id. ¶ 33.)

## II.   STANDARD OF REVIEW

Defendant argues that "[t]he Complaint fails to state a
claim upon which relief can be granted" pursuant to Federal Rule
of Civil Procedure 12(b)(6). (See ECF No. 4 at 1.)

Under Rule 12(b)(6), a court can dismiss a claim for
"failure to state a claim upon which relief can be granted."
Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for
relief must contain: . . . a short and plain statement of the
claim showing that the pleader is entitled to relief . . . ."
Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss for failure to state a
claim, "[f]actual allegations must be enough to raise a right to
relief above the speculative level and to state a claim to
relief that is plausible on its face." Keys v. Humana, Inc.,
684 F.3d 605, 608 (6th Cir. 2012) (alteration in original)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))
(internal quotation marks omitted). "A claim is plausible on
its face if the 'plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

On a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Id. (alteration in original) (citation omitted) (internal quotation marks omitted).

**III. ANALYSIS**

Regarding the City, the Court determines whether to dismiss Plaintiff's § 1983 claims, whether to exercise supplemental jurisdiction over Plaintiff's state-law claims, and whether to dismiss Plaintiff's state-law claims.

**A.   Plaintiff Did Not Sufficiently Plead His § 1983 Claims.**

In Count IV, Plaintiff brings claims under § 1983 for "unreasonable seizures" under the Fourth and Fourteenth Amendments as well as for "deprivation of property" and

"[deprivation of] property without proper due process" under the Fourteenth Amendment.  (<u>See</u> Am. Compl., ECF No. 8, ¶¶ 24-25.)

The City argues that "[t]he Complaint fails to state a claim pursuant to [] § 1983 because the Plaintiff has not alleged that a policy or custom is responsible for the alleged constitutional violations."  (Def.'s Mem. in Supp., ECF No. 4-1, at 3.)

"Section 1983 provides 'a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States.'"  <u>Stoudemire v. Mich. Dep't of Corr.</u>, 705 F.3d 560, 567 (6th Cir. 2013) (quoting <u>Jones v. Muskegon Cnty.</u>, 625 F.3d 935, 940-41 (6th Cir. 2010)).

"A municipality cannot be held liable in [§] 1983 actions on a <u>respondeat superior</u> theory."  <u>Spears v. Ruth</u>, 589 F.3d 249, 256 n.6 (6th Cir. 2009) (citing <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 691 (1978)).  "To establish that a local government is liable under § 1983, a plaintiff must show that (1) the local government had an official policy, custom, or practice that (2) deprived the plaintiff of his federal rights."  <u>Fields v. Henry Cnty., Tenn.</u>, 701 F.3d 180, 183 (6th Cir. 2012). Regarding the first requirement,

> [t]here are at least four avenues a plaintiff may take
> to prove the existence of a municipality's illegal
> policy or custom.  The plaintiff can look to (1) the

9

> municipality's legislative enactments or official
> agency policies; (2) actions taken by officials with
> final decision-making authority; (3) a policy of
> inadequate training or supervision; or (4) a custom of
> tolerance or acquiescence of federal rights
> violations.

Spears, 589 F.3d at 256 (quoting Thomas v. City of Chattanooga,
398 F.3d 426, 429 (6th Cir. 2005)) (internal quotation marks
omitted).

In the case presently before this Court, Plaintiff does not
sufficiently allege the existence of a policy, practice, or
custom of the City.  There is no reference to a policy,
practice, or custom in the allegations supporting Plaintiff's
§ 1983 claims in Count IV.  (See Am. Compl., ECF No. 8, ¶¶ 23-
25.)  Those allegations merely state that "Defendants . . . have
engaged in actions and abuses which deprived Plaintiff of rights
secured by the United States Constitution including protection
from unreasonable seizures, deprivation of property, and due
process" (id. ¶ 24) and that, "[b]y confiscating Plaintiff's
property and not returning it to him, Defendants have deprived
Plaintiff of his property without proper due process" (id.
¶ 25).

Furthermore, the three allegations in the Amended Complaint
that refer to "policies and procedures" are conclusory.  First,
Plaintiff states that the "City of Memphis is liable for
conversion . . . through its policies and procedures that

10

allowed Plaintiff's property to be taken into custody, then
sold, destroyed, or otherwise disposed of." (Id. ¶ 14.)
Second, Plaintiff states that the City violated Section 39-17-
1317 "by allowing the policies and procedures that led to the
illegal confiscation and disposition of Plaintiff's property."
(Id. ¶ 19.)  Third, Plaintiff alleges that the City was
negligent because "[the City] negligently failed to adequately
train or supervise Defendant officers and/or negligently
encouraged such behaviour by its policies and procedures
concerning confiscation of property." (Id. ¶ 32.)  These
statements are conclusory because they simply assume that an
unlawful seizure or disposal of property must be the result of
the City's failure to train or the City's policies and
procedures.  Plaintiff's "conclusory allegations . . . will not
suffice" to survive the Motion to Dismiss.  See In re Travel
Agent Comm'n Antitrust Litig., 583 F.3d at 903 (internal
quotation marks omitted).

     Plaintiff argues that "[a]dopting City of Memphis' argument
would unjustly impose a heightened pleading standard" for civil-
right claims. (Pl.'s Resp., ECF No. 11, at 2 (citing Leatherman
v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507
U.S. 163, 164 (1993)).)  The City's argument that the § 1983
claims are insufficiently pled, however, is consistent with the
pleading standard articulated in Iqbal.  (See Def.'s Mem. in

Supp., ECF No. 4-1, at 5-6.)  The pleading standard in Iqbal is not a heightened pleading standard; it is the current state of the law as applicable to civil-rights claims.  See Reilly v. Vadlamudi, 680 F.3d 617, 622-23 (6th Cir. 2012) (quoting Iqbal, 556 U.S. at 678) (applying the pleading standard announced in Iqbal to a § 1983 claim).

The Court, therefore, finds that the § 1983 claims against the City are not sufficiently pled.  The City's Motion to Dismiss (ECF No. 4) is GRANTED regarding the § 1983 claims against the City.  Plaintiff's § 1983 claims against the City are DISMISSED.

**B.   The Court Will Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claims.**

The City argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. (Def.'s Mem. in Supp., ECF No. 4-1, at 10-11.)  The City argues that there are "compelling reasons for declining jurisdiction" over Plaintiff's state-law claims (id. at 11 (quoting 28 U.S.C. § 1367(c)) because the "statutory language [of the TGTLA] evinces a clear legislative policy in favor of having state courts hear TGTLA cases" (id. (citing Gregory v. Shelby Cnty., Tenn., 220 F.3d 433, 446 (6th Cir. 2000))).

Pursuant to 28 U.S.C. § 1367(a), "'[i]f there is some basis for original jurisdiction, the default assumption is that the

court will exercise supplemental jurisdiction over all related claims.'" Veneklase v. Bridgewater Condos, L.C., 670 F.3d 705, 716 (6th Cir. 2012) (quoting Campanella v. Commerce Exch. Bank, 137 F.3d 885, 892 (6th Cir. 1998) (interpreting 28 U.S.C. § 1367(a))).

> The district court may only decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Id. (quoting 28 U.S.C. § 1367(c)); accord Campanella, 137 F.3d at 892.

"Section 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims . . . ." Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Id. at 951-52 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

The Court considers whether it has the discretion to decline supplemental jurisdiction; whether the values of judicial economy, convenience, and fairness weigh in favor of

13

exercising supplemental jurisdiction; and whether the value of comity is dispositive.

> **1.   The Court Has Discretion to Decline Supplemental Jurisdiction over Plaintiff's State-Law Claims Due to the Tennessee Legislature's Statement in Section 29-20-307.**

As relevant to the instant Motion, "district courts may decline to exercise supplemental jurisdiction over a claim '. . . if . . . in exceptional circumstances, there are other compelling reasons for declining jurisdiction.'" See Gregory, 220 F.3d at 446 (quoting 28 U.S.C. § 1367(c)).

Section 29-20-307 states that Tennessee "circuit courts shall have exclusive original jurisdiction over any action brought under [the TGTLA]." Tenn. Code Ann. § 29-20-307. Through this statement, "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts.  This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." Gregory, 220 F.3d at 446.  The Tennessee legislature's statement, therefore, allows the Court to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.[1]  See id.

---

[1] "[T]he [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 640 (2009) (second alteration in original) (internal quotation marks omitted).  "[A] decision 'declining to exercise that statutory authority [is] not based on a jurisdictional defect but on its discretionary choice not to hear the claims despite its subject-matter jurisdiction over them.'" Gamel,

2.   **The Values of Judicial Economy, Convenience, and Fairness Weigh in Favor of Exercising Supplemental Jurisdiction.**

Four of the five Claims that allege state-law violations by the City explicitly rely on "the doctrine of respondeat superior." (See Am. Compl., ECF No. 8, ¶¶ 14, 19, 27, 32.) If the state-law claims were dismissed, judicial economy would be undermined because both federal and state courts would potentially have to determine whether Defendant Officers were negligent. It would also be inconvenient to require the Defendant Officers to testify to, and the Plaintiff to challenge, the same behavior in both federal and state proceedings. It would also be unfair to Plaintiff, who initially filed all of his claims in the Circuit Court of Shelby County, to allow the City to remove the action and then force Plaintiff to engage in duplicative litigation in both federal and state court. As a result, refusing to exercise supplemental jurisdiction over the state-law claims against the City "would necessitate duplicative litigation which would be wasteful of judicial and litigant resources." See Brown v. City of Memphis, 440 F. Supp. 2d 868, 878 (W.D. Tenn. 2006) (exercising supplemental jurisdiction over state-law claims affected by the TGTLA).

---

625 F.3d at 951 (second alteration in original) (quoting Carlsbad Tech., Inc., 556 U.S. at 640). As a result, the Court need consider only Plaintiff's argument and not other possible bases for declining supplemental jurisdiction under 28 U.S.C. § 1367(c).

3.   **In the Instant Case, the Value of Comity Does Not Outweigh the Values of Judicial Economy, Convenience, and Fairness.**

The comity doctrine reflects

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways."

Levin v. Commerce Energy, Inc., 130 S. Ct. 2323, 2330 (2010) (quoting Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 112 (1981)).

The "exceptional circumstance" allowing the Court to decline supplemental jurisdiction is relevant to the value of comity.  The "exceptional circumstance" identified in Gregory is that the "Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts" in Section 29-20-307.[2]  See Gregory, 220 F.3d at 446.  The Tennessee legislature's statement reflects a desire that a certain state court have exclusive jurisdiction to interpret the TGTLA's denial of jurisdiction to state courts.  See City of Lavergne v. S. Silver, Inc., 872 S.W.2d 687, 690 (Tenn. App. Ct. 1993)

---

[2] This Court has questioned this reading of Section 29-20-307.  In Brown, this Court stated that, "[r]ead in the context of [Section] 29-20-307 as a whole, the words 'exclusive original jurisdiction' appear to pertain to the relationship between the state circuit courts and the general sessions courts, and have no bearing on federal court jurisdiction." Brown, 440 F. Supp. 2d at 878 n.5 (citation omitted).  The statute does, however, express a preference for a certain state court under certain circumstances to interpret the TGTLA.  See Tenn. Code Ann. § 29-20-307.  As a result, the statement is relevant to the value of comity.

("[T]he intent of the Legislature in enacting the Governmental
Tort Liability Act was to deny jurisdiction to the Courts of
this State to entertain a suit against a governmental entity
that is immune from suit."), reh'g denied, 1994 WL 88930 (Tenn.
1994) (per curiam) ("[G]overnmental immunity is jurisdictional
and does not have to be plead as an affirmative defense.");
accord Blakely v. City of Clarksville, 244 F. App'x 681, 683
(6th Cir. 2007) ("[I]mmunity based on the [TGTLA] is a
jurisdictional bar that may be raised at any time.").  As a
result, the Tennessee legislature's statement is relevant to
"the belief that the National Government will fare best if the
States and their institutions are left free to perform their
separate functions in separate ways."  See Levin, 130 S. Ct. at
2330.

Even though Gregory states that comity is an "exceptional
circumstance" allowing a district court to decline supplemental
jurisdiction, the value of comity is not dispositive in the
instant case.  Gregory does not indicate how much weight the
Tennessee legislature's statement should be given in any
particular case.  Giving the Tennessee legislature's statement
dispositive weight in the instant case would allow the Tennessee
legislature to overcome important considerations of judicial
economy, convenience, and fairness.  See supra Part III.B.2.
Doing so would not reflect "a proper respect for state

17

functions," see Levin, 130 S. Ct. at 2330, because states cannot restrict federal jurisdiction, Superior Beverage Co. v. Schieffelin & Co., 448 F.3d 910, 917 (6th Cir. 2006) ("In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction." (internal quotation marks omitted)).  Rather, doing so would allow the state to do indirectly what it cannot do directly.  See, e.g., United States v. Leake, 95 F.3d 409, 411 (6th Cir. 1996) (finding, in the context of the Fourth Amendment, that the fruit-of-the-poisonous-tree doctrine "ensures that the government cannot achieve indirectly what it is forbidden to accomplish directly").

In summary, the Court will exercise supplemental jurisdiction over the state-law claims against the City because the values of judicial economy, convenience, and fairness outweigh the value of comity.  See Gamel, 625 F.3d at 951-52.

### C.   The City Has Immunity from Plaintiff's State-Law Claims.

"Tennessee codified its sovereign immunity law in the Tennessee Governmental Tort Liability Act ("TGTLA")."  Johnson v. City of Memphis, 617 F.3d 864, 871 (6th Cir. 2010).  "Section 29-20-201(a) [of the TGTLA] provides that '[e]xcept as may be otherwise provided in this chapter, all governmental entities

18

shall be immune from suit for any injury which may result' from
the exercise of government duties." Id. at 871-72 (alteration
in original); accord Giggers v. Memphis Hous. Auth., 363 S.W.3d
500, 507 (Tenn. 2012) (citing Tenn. Code Ann. § 29-20-201(a))
("Generally, the [TGTLA] forecloses suits against governmental
entities that cause injury when exercising or discharging their
duties.").

    "The TGTLA removes immunity for 'injury proximately caused
by a negligent act or omission of any employee within the scope
of his employment,' but provides a list of exceptions to this
removal of immunity." Johnson, 617 F.3d at 872 (quoting Tenn.
Code Ann. § 29-20-205). "Injuries that 'arise[] out of . . .
civil rights' are one such exception, that is, sovereign
immunity continues to apply in those circumstances." Id.
(alterations in original) (quoting Tenn. Code Ann. § 29-20-
205(2)); accord Parker v. Henderson Cnty., No. W2009-00975-COA-
R3-CV, 2010 WL 377044, at *4 (Tenn. Ct. App. Feb. 4, 2010)
(finding that immunity had been removed because "there is no
basis for this Court to conclude that [the plaintiff's] injury
arose out of a violation of his federal civil rights").

    The "TGTLA's 'civil rights' exception has been construed to
include claims arising under [] § 1983 and the United States
Constitution." Johnson, 617 F.3d at 872. For the purposes of
Section 29-20-205, a state-law claim arises under § 1983 if it

"arises out of the same circumstances giving rise to [the plaintiff's] civil rights claim under § 1983." Id.; accord Partee v. City of Memphis, Tenn., 449 F. App'x 444, 448 (6th Cir. 2011) ("The district court correctly concluded that these claims arise out of exactly the same circumstances as the [plaintiffs'] civil rights claims, thus falling within the exception to the waiver of immunity set forth in the [TGTLA].").

The Court considers Plaintiff's conversion and negligence claims before considering Plaintiff's statutory claims.

### 1.   Plaintiff's Conversion and Negligence Claims

The Court considers Plaintiff's negligence and conversion claims before directly responding to Plaintiff's arguments.

### a.   The City Has Immunity from Plaintiff's Negligence and Conversion Claims Because These Claims Arise out of the Same Circumstances As Plaintiff's § 1983 Claims.

Plaintiff's § 1983 civil-rights claims are based on Defendants' alleged seizure and failure to return his property. Plaintiff alleges that Defendants "deprived Plaintiff of rights secured by the United States Constitution including protection from unreasonable seizures, deprivation of property, and due process under the Fourth and Fourteenth Amendments."  (Am. Compl., ECF No. 8, ¶ 24.)  Plaintiff further alleges that "[b]y confiscating Plaintiff's property and not returning it to him, Defendants have deprived Plaintiff of his property without

proper due process" pursuant to the Fourteenth Amendment.  (Id. ¶ 25.)

There are only two factual allegations that support a seizure and deprivation of property.  The civil-rights claims, therefore, must be based on the factual allegations that "Defendant officers seized his firearms and other accessories" (see id. ¶ 8) and that Defendants "disposed of his property on June 14, 2012" (see id. ¶ 11).  State-law claims relying on these factual allegations will "arise[] out of the same circumstances giving rise to [the] civil rights claim under § 1983."  See Johnson, 617 F.3d at 872.

Plaintiff's conversion claim fails for two reasons.  In Count I, Plaintiff claims that the City is liable for conversion because Defendant Officers "unlawfully seized Plaintiff's property  . . . [and] refuse[d] to return Plaintiff's property" and Defendants "exercised dominion and control over Plaintiff's property, denied him an opportunity to retrieve it, and have refused to compensate him for his loss."  (Am. Compl., ECF No. 8, ¶¶ 13-14.)  First, the claim is not sufficiently pled.  There is no allegation in or incorporated into Count I of "a negligent act or omission" that would trigger Section 29-20-205.  (see id. ¶¶ 1-14.)  Furthermore, there is no allegation indicating a basis other than Section 29-20-205 for concluding that immunity has been removed for Plaintiff's conversion claim.  As a result,

Plaintiff has not "state[d] a claim to relief that is plausible on its face."[3]  See Keys, 684 F.3d at 608 (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted).

Second, even if the subsequent negligence claims are applied to the conversion claim, immunity is not removed by Section 29-20-205 because the conversion claim is based on the same factual allegations as Plaintiff's § 1983 claims.  The only factual allegations supporting the alleged seizure of, and failure to return, Plaintiff's property in his conversion claim are the same factual allegations supporting Plaintiff's § 1983 claims:  that "Defendant officers seized his firearms and other accessories" (see Am. Compl., ECF No. 8, ¶ 8) and that Defendants "disposed of his property on June 14, 2012" (see id. ¶ 11).  As a result, the conversion claim arises out of the same circumstances as the § 1983 claims, and the City has immunity from the conversion claim.  See Johnson, 617 F.3d at 872.  For these two reasons, the Court finds that Plaintiff's conversion claim should be dismissed.

The City has immunity from Plaintiff's negligence claims because the negligence claims are based on the same factual allegations as Plaintiff's § 1983 claims.  In Count V, Plaintiff

---

[3] Governmental immunity pursuant to the TGTLA is jurisdictional.  City of Lavergne, 872 S.W.2d at 690, reh'g denied, 1994 WL 88930 (("[G]overnmental immunity is jurisdictional and does not have to be plead as an affirmative defense."); accord Blakely, 244 F. App'x at 683.  As a result, removal of immunity must be pled in Plaintiff's Amended Complaint.  See Fed. R. Civ. P. 8(a)(1).

claims that Defendants were negligent by "wrongfully disposing of Plaintiff's property, or allowing it to be disposed of, on or about June 14, 2012." (Am. Compl., ECF No. 8, ¶ 29.) The only factual allegation supporting this negligence claim is the same factual allegation supporting Plaintiff's § 1983 claims: that Defendants "disposed of his property on June 14, 2012" (see id. ¶ 11). As a result, the negligence claim in Count V arises out of the same circumstances as the § 1983 claims, and the City has immunity from the negligence claim in Count V. See Johnson, 617 F.3d at 872.

In Count VI, Plaintiff alleges that the City was negligent based on Defendant Officers "negligently seizing non-contraband property[] and not ensuring that it would be returned to him" based on the "doctrine of respondeat superior," based on the City's failure "to adequately train or supervise," and based on the City's "policies and procedures concerning confiscation of property." (See Am. Compl., ECF No. 8, ¶ 32.) Plaintiff further alleges that Defendants were negligent because they "negligently failed to give Plaintiff proper notice of the sale or disposition of his property, and did not give him an opportunity to retrieve it." (Id.) The only factual allegations supporting the alleged negligent seizure of and failure to return Plaintiff's property in Count VI are the same factual allegations supporting Plaintiff's § 1983 claims: that

23

"Defendant officers seized his firearms and other accessories"
(see id. ¶ 8) and that Defendants "disposed of his property on
June 14, 2012" (see id. ¶ 11).  As a result, the negligence
claim in Count VI arises out of the same circumstances as the
§ 1983 claims, and the City has immunity from the negligence
claim in Count VI.  See Johnson, 617 F.3d at 872.

Furthermore, in his Response, Plaintiff admits that his
state-law claims arise from the same circumstances as his § 1983
claims:  "All of the [federal and state] claims involve the same
set of facts, and are connected to each other."  (See Pl.'s
Resp., ECF No. 11, at 7.)

**b.  Plaintiff's Arguments Are Not Dispositive.**

First, Plaintiff states that "[t]he negligence and
conversion claims are separate from the § 1983 civil rights
violations claims." (Pl.'s Resp., ECF No. 11, at 6.)  Plaintiff
does not explain why the state-law claims are "separate," but
Plaintiff does not assert that the claims are "separate" in a
way that is dispositive to removal of immunity pursuant to
Section 29-20-205.  In arguing that the Court should exercise
supplemental jurisdiction over the state-law claims, Plaintiff
stated that "[a]ll of the [federal and state] claims involve the
same set of facts, and are connected to each other."  (Id. at
7.)  Plaintiff does not assert that the claims are "separate" in
the sense that the claims do not arise from the same set of

24

circumstances giving rise to Plaintiff's § 1983 claims.
Furthermore, even if Plaintiff is attempting to make a
dispositive argument, that argument is belied by the factual
allegations in the Amended Complaint.  See supra Part III.C.1.a.

Second, Plaintiff relies on Limbaugh v. Coffee Medical
Center, 59 S.W.3d 73 (Tenn. 2001), to argue that his conversion
and negligence claims are not subject to governmental immunity
pursuant to the civil-rights exception in Section 29-20-205:

> If the Court were to adopt City of Memphis' line of
> reasoning [that Plaintiff's state-law claims are
> subject to immunity pursuant to the civil-rights
> exception in Section 29-20-205(2)], then many other
> torts committed by city or state officials could be
> classified as civil rights violations, including
> assault and battery.  The Tennessee Supreme Court
> already confronted this issue however, and did not
> include assault and battery as a civil rights
> violation.

(Pl.'s Resp., ECF No. 11, at 6.)

Limbaugh does not support Plaintiff's argument.  Limbaugh
did not "include assault and battery as a civil rights
violation" (id.) because the plaintiff in Limbaugh did not make
a civil-rights claim, see Limbaugh, 59 S.W.3d at 77.  The only
claims before the court in Limbaugh were state-law claims of
negligence, assault, and battery.  Id.  As a result, the holding
in Limbaugh — "we hold that [S]ection 29-20-205 of the [TGTLA]
removes immunity for injuries proximately caused by the
negligent act or omission of a governmental employee except when

the injury arises out of only those specified torts enumerated in subsection (2)," Limbaugh, 59 S.W.3d at 84 — does not mean that only the torts specified in Section 29-20-205(2) can arise out of a civil rights claim.  See Johnson, 617 F.3d at 872 (stating that a state-law claim arises under § 1983 if it "arises out of the same circumstances giving rise to [the plaintiff's] civil rights claim under § 1983").

Finally, Plaintiff argues that the negligence claim based on respondeat superior is properly pled because "[t]he TGTLA claim is based on the employees' negligence." (Pl.'s Resp., ECF No. 11, at 7.)  As explained above, however, the negligence claims arise from the same circumstances as Plaintiff's § 1983 claims.  See supra Part III.C.1.a.

In summary, the Court finds that Plaintiff's claims of conversion in Count I and negligence in Counts V and VI are either insufficiently pled or barred by governmental immunity. Plaintiff's conversion and negligence claims are DISMISSED.

**2.   Plaintiff's Claims Based on State Statutes**

The Court considers immunity pursuant to Section 29-20-205 before considering whether Section 39-17-1317 or Section 40-17-118 provide a waiver of immunity that is independent of the TGTLA.

a.  **The City's Immunity Is Not Removed Pursuant to Section 29-20-205.**

Plaintiff's statutory claims arise from the same circumstances that Plaintiff alleges as the basis of this § 1983 claims.  Regarding the alleged violation of Section 39-17-1317, Plaintiff alleges that Defendant Officers "illegally seized property" (Am. Compl., ECF No. 8, ¶ 16) and that the City had "policies and procedures that led to the illegal confiscation and disposition of Plaintiff's property" (id. ¶ 19).  Regarding the alleged violation of Section 40-17-118, Plaintiff alleges that Defendant Officers "confiscated [Plaintiff's] property" (id. ¶ 21) and that Defendants "have not returned Plaintiff's property to him" (id. ¶ 22).  Plaintiff's claims based on state statutes, therefore, arise from the same circumstances that Plaintiff alleges as the basis of his § 1983 claims:  that "Defendant officers seized his firearms and other accessories" (see id. ¶ 8) and that Defendants "disposed of his property on June 14, 2012" (see id. ¶ 11).

Furthermore, Plaintiff admits that his state-law claims arise from the same circumstances as his § 1983 claims.  In arguing that this Court should exercise supplemental jurisdiction over his state-law claims, Plaintiff admits that "[a]ll of the [federal and state] claims involve the same set of

facts, and are connected to each other." (Pl.'s Resp., ECF No. 11, at 7.)

**b.   The State Statutes Do Not Provide a Basis for Relief.**

In addition to the TGTLA, other state statutes may waive immunity, but Tennessee courts will not find a waiver of immunity "unless there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation." Johnson, 617 F.3d at 871 (quoting Davidson v. Lewis Bros. Bakery, 227 S.W.3d 17, 19 (Tenn. 2007)) (internal quotation marks omitted). As a result,

> if a specific or special statute provides for a remedy and waiver of immunity for injuries that are expressly excluded from the operation of the [TGTLA], then those remedies would not be affected by the [TGTLA] because they cannot conflict with the statutory scheme of the [TGTLA] and are separate from it, regardless of whether these statutes were enacted before or after the [TGTLA].

Jenkins v. Loudon Cnty., 736 S.W.2d 603, 608 (Tenn. 1987), abrogated on other grounds by Limbaugh, 59 S.W.3d at 83; accord Cruse v. City of Columbia, 922 S.W.2d 492, 496 (Tenn. 1996).

The Court considers Plaintiff's claims pursuant to Section 39-17-1317 before considering Plaintiff's claims pursuant to Section 40-17-118.

**i.   Section 39-17-1317 Does Not Provide for the Remedy of Damages.**

Plaintiff claims that the City violated Section 39-17-1317 "under the doctrine of respondeat superior, and by allowing the

28

policies and procedures that led to the illegal confiscation and
disposition of Plaintiff's property." (See Am. Compl., ECF No.
8, ¶ 19.)

Plaintiff seeks a remedy that is not provided by the
statute.  Plaintiff states that he is seeking damages for the
loss of his property:  "This is a civil action for money damages
against [Defendants] for illegally seizing Plaintiff's property,
and after nearly a year and a half, disposing of Plaintiff's
property, or allowing it to be disposed, without giving
Plaintiff a chance to claim his lawful property." (Id. ¶ 1.)
Section 39-17-1317, however, does not provide for the remedy of
damages for property that was seized and subsequently lost.  See
Tenn. Code Ann. § 39-17-1317.  The Court, therefore, finds that
there is no waiver of immunity in Section 39-17-1317 for the
remedy Plaintiff seeks.  See Johnson, 617 F.3d at 871; Jenkins,
736 S.W.2d at 608.

Furthermore, Plaintiff fails to allege that a violation of
Section 39-17-1317 entitles Plaintiff to damages.  As a result,
even if there is a statute granting damages for a violation of
Section 39-17-1317, Plaintiff has failed "to state a claim to
relief that is plausible on its face." See Keys, 684 F.3d at
608 (quoting Twombly, 550 U.S. at 555) (internal quotation marks
omitted).

Plaintiff's Section 39-17-1317 claim is DISMISSED.

ii.  **Plaintiff Does Not Sufficiently Plead His Claim of Confiscation of Stolen Property Pursuant to Section 40-17-118.**

"By its own terms, [] Section 40-17-118 creates a separate cause of action against governmental entities for the return of confiscated property and for damages in the event of damage or destruction to the property." Cruse, 922 S.W.2d at 496.  As a result, the statute is not affected by the TGTLA:  "[W]hile an aggrieved property owner may, in certain limited circumstances, proceed under the [TGTLA] if the government employees have negligently caused injury, a property owner whose property is confiscated may seek relief under Section 40-17-118 regardless of how the damage or destruction occurred." Id. (citation omitted).

In the instant action, Plaintiff has not sufficiently pled a cause of action pursuant to Section 40-17-118.  Section 40-17-118 provides a remedy for "[p]ersonal property confiscated as stolen property." Tenn. Code Ann. § 40-17-118.  Plaintiff merely alleges that Defendants would be liable pursuant to Section 40-17-118 "if the Defendant officers confiscated the property as stolen property."  (Am. Compl., ECF No. 8, ¶ 21.) There is no allegation in the Amended Complaint that the property allegedly confiscated by Defendants was or might be stolen property.  The Court, therefore, finds that Plaintiff fails "to state a claim to relief that is plausible on its

face," see Keys, 684 F.3d at 608 (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted), regarding Section 40-17-118.

Plaintiff's Section 40-17-118 claim is DISMISSED.

In summary, the Court finds that Plaintiff's state-law claims against the City are either improperly pled or barred by governmental immunity.  As a result, the City's Motion to Dismiss (ECF No. 4) is GRANTED regarding Plaintiff's state-law claims against the City.  Plaintiff's state-law claims against the City are DISMISSED.

## III. CONCLUSION

For the reasons stated above, the Motion to Dismiss Defendant City of Memphis, Tennessee (ECF No. 4), is GRANTED. All claims against Defendant City of Memphis, Tennessee, are hereby DISMISSED WITH PREJUDICE.


**IT IS SO ORDERED,** this 15th day of May, 2013.

/s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE